## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
In re:                                          :    Chapter 11
                                                :
AMERICAN HOME MORTGAGE                          :    Bankruptcy Case No. 07-11047-CSS
HOLDINGS, INC., a Delaware                      :
Corporation, et al.,                            :    Jointly Administered
                                                :
          Debtors.                              :
------------------------------------------------ x
DB STRUCTURED PRODUCTS, INC.,                   :
                                                :
          Appellant,                            :
                                                :
     v.                                         :    Civil Action No. 07-0773-JJF
                                                :
AMERICAN HOME MORTGAGE                          :
HOLDINGS, INC., a Delaware                      :
Corporation, et al.,                            :
                                                :
          Appellees.                            :
------------------------------------------------ x
```

## APPENDIX IN SUPPORT OF ANSWERING BRIEF OF APPELLEES
## AMERICAN HOME MORTGAGE HOLDINGS, INC., ET AL.

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Appellees American Home Mortgage Holdings, Inc., et al.*

## **APPENDIX – TABLE OF CONTENTS**

| **Tab** | **Description** |
| --- | --- |
| A. | Supplemental Cure Notice |
| B. | Objection to UBS Stay Motion |

066585.1001

## Appendix A

**Supplemental Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,     :
                                                    :    Jointly Administered
                                                    :
    Debtors.                                         :    Extended Objection Deadline: October 3, 2007 at 4:00 p.m.
                                                    :    Ref. Docket Nos. 11, 113, 403 & 674
----------------------------------------------------------- x
```

**SUPPLEMENTAL NOTICE OF (I) POSSIBLE ASSUMPTION AND
ASSIGNMENT OF CERTAIN LEASES, LICENSE AGREEMENTS, AND
EXECUTORY CONTRACTS; AND (II) PROPOSED CURE OBLIGATIONS, IF ANY**

PLEASE TAKE NOTICE that on September 10, 2007, American Home

Mortgage Holdings, Inc., *et al.*, the above-captioned debtors and debtors in possession

(collectively, the "Debtors") filed the *Modified Notice of (I) Possible Assumption and*

*Assignment of Certain Leases, License Agreements and Executory Contracts; and (II) Proposed*

*Cure Obligations, if any* [Docket No. 674] (the "Modified Notice of Potential Assumption and

Assignment")  in connection with the Debtors' motion [Docket No. 11] (the "Sale Motion") for

authority to sell (the "Sale") the assets related to the Debtors' mortgage loan servicing business

(the "Servicing Business"), free and clear of all liens, claims, encumbrances and other interests

pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and the

authority to assume and assign various agreements related to the Servicing Business.

PLEASE TAKE FURTHER NOTICE that pursuant to the Sale Motion, the

Debtors intend to assume and assign certain of their unexpired leases, license agreements, and

executory contracts (collectively, the "Potential Executory Contracts") pursuant to section

365(b)(1)(A) of the Bankruptcy Code.  By the Modified Notice of Potential Assumption and

Assignment, the Debtors identified certain Potential Executory Contracts that they may seek to assume and assign and corresponding proposed cure obligations, if any.

PLEASE TAKE FURTHER NOTICE that the Debtors have identified additional unexpired leases, license agreements, and executory contracts that the Debtors intend to assume and assign (collectively, the "Supplemental Potential Executory Contracts") pursuant to section 365(b)(1)(A) of the Bankruptcy Code.  The Supplemental Potential Executory Contracts that the Debtors may seek to assume and assign and corresponding proposed cure obligations, if any (the "Proposed Cure Obligations"), are listed on Exhibits A and B attached hereto.

*PLEASE TAKE FURTHER NOTICE THAT THE DEBTORS ARE ONLY SEEKING TO ASSUME AND ASSIGN, TO THE EXTENT SUCH POTENTIAL EXECUTORY CONTRACTS ARE EXECUTORY, THE LOAN SERVICING RIGHTS RELATED TO THE POTENTIAL EXECUTORY CONTRACTS IDENTIFIED ON EXHIBIT B.*

*PLEASE TAKE FURTHER NOTICE THAT, BY LISTING A POTENTIAL EXECUTORY CONTRACT ON THE FOLLOWING EXHIBITS, THE DEBTORS DO NOT CONCEDE THAT ANY SUCH CONTRACT IS EXECUTORY.*

PLEASE TAKE FURTHER NOTICE that any objections to the assumption and assignment of the Supplemental Potential Executory Contracts and the corresponding Proposed Cure Obligations, if executory, and any objections to the sale and transfer of loan servicing rights must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, **on or before 4:00 p.m. (prevailing Eastern Time) on October 3, 2007**, and (d) be served so as to be received no later than 4:00 p.m.

(prevailing Eastern Time) on the same day, upon (i) American Home Mortgage Holdings, Inc.,

538 Broadhollow Road, Melville, New York 11747 (Attn.: Alan Horn, General Counsel); (ii)

Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391,

Wilmington, Delaware 19899-0391 (Attn.: James L. Patton, Jr.), counsel to the Debtors; (iii)

Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn:

Jeffrey M. Levine); (iv) counsel to the Official Committee of Unsecured Creditors, Hahn &

Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn.: Mark S. Indelicato); (v) Kaye

Scholer LLP, 425 Park Avenue, New York, New York 10022 (Attn.: Margot B. Schonholtz and

Scott D. Talmadge) and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North

Market Street, Wilmington, Delaware 19801 (Attn.: Laurie Selber Silverstein), counsel to Bank

of America, N.A., as Administrative Agent for the lenders under that certain Second Amended

and Restated Credit Agreement, dated August 10, 2006; (vi) Jones Day, 222 East 41st Street,

New York, New York 10017 (Attn.: Corinne Ball and Erica M. Ryland) and Greenberg Traurig

LLP, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn.: Victoria

Counihan), counsel to the Debtors' postpetition lenders; and (vii) the Office of the United States

Trustee, 844 King Street, Room 2313, Wilmington, Delaware 19801 (Attn.: Joseph McMahon).

PLEASE TAKE FURTHER NOTICE that an evidentiary hearing (the "Sale

Hearing") on the relief requested in the Sale Motion (among other things, to confirm the results

of any Auction (as defined in the Sale Motion) and approve the sale of the Servicing Business to

the prevailing purchaser) has been scheduled on **October 9, 2007 at 2:30 p.m.** (prevailing

Eastern time), before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at

the United States District Court for the District of Delaware, 824 Market Street, 5th Floor,

Courtroom 6, Wilmington, Delaware 19801. The Sale Hearing may be further adjourned from

time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that any person or entity receiving notice of the Sale Hearing, the Notice of Potential Assumption and Assignment and/or this Notice that fails to file an objection on a timely basis shall (a) be forever barred from objecting to the Proposed Cure Obligations and from asserting any additional cure or other amounts with respect to the assumption and assignment of such Potential Executory Contracts and the Debtors shall be entitled to rely solely upon the Proposed Cure Obligations, (b) be deemed to have consented to the transfer of the loan servicing rights, and (c) be deemed to have consented to the assumption and assignment of such Potential Executory Contracts and shall be forever barred and estopped from asserting or claiming against the Debtors, the purchaser of the Servicing Business, or any other assignee of the relevant Potential Executory Contract that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Potential Executory Contract.

PLEASE TAKE FURTHER NOTICE that in the event that an objection to the Proposed Cure Obligation (the "Cure Amount Objection") is filed, the Cure Amount Objection must set forth:  (a) the basis for the objection; and (b) the amount the party asserts as the cure amount; provided, however, such Cure Amount Objection shall not be deemed to be an objection to the Sale Motion.

PLEASE TAKE FURTHER NOTICE that hearings on Cure Amount Objections and/or objections to the transfer of loan servicing rights may be held (a) at the Sale Hearing, or (b) at such other date after the Sale Hearing as the Court may designate.

PLEASE TAKE FURTHER NOTICE that the Debtors' decision to assume and assign the Potential Executory Contracts, if executory, and/or transfer loan servicing rights is subject to the Court's approval and consummation of the Sale. Absent consummation of the Sale, each of the Potential Executory Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to remove any Potential Executory Contract from any proposed asset sale and to withdraw the request to assume and assign any such Potential Executory Contract. The identification of a Proposed Cure Obligation is without prejudice to the Debtors' right to modify, amend or contest the validity and/or amount of such Proposed Cure Obligation prior to the assumption and assignment of the respective Potential Executory Contract and/or transfer of the loan servicing rights.

PLEASE TAKE FURTHER NOTICE that the designation of any agreement as a Potential Executory Contract shall not constitute or be deemed to be a determination or admission by the Debtors that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: Wilmington, Delaware
      September 26, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Margaret U*

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Matthew B. Lunn (No. 4119)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession

**EXHIBIT A**

**Vendor/IT Contracts**

| Counter Party | Address/Contact Information | Description of Agreement | Proposed Cure Amounts |
|---|---|---|---|
| Aia Software North America, Inc | Aia Software North America, Inc 5 Broadacre Drive, Suite 100 Mount Laurel, NJ 08054 | Professional Services Agreement and Software for Document creating in LSAMS | $8,091.00 |
| AS/Computer Consultants | AS/Computer Consultants 4555 McDonnell Blvd. St. Louis, MO 63134 | Limited Statement of Work | $0.00 |
| Aspect Software, Inc. | Aspect Software, Inc. 6 Technology Park Drive Westford, MA 01886 Attn: General Counsel | End User Equipment / Software / Services Agreement for Concerto call center software/hardware | $12,990.00 |
| CheckFree Services Corporation | CheckFree Services Corporation 23 Crossroads Drive, Suite 200 Owings Mills, MD 21117 | Master Software System License and Service Agreement | $4,700.00 |
| D.W. Consulting, Inc | D.W. Consulting, Inc 2000 Bolden Road Irving, TX 75060 | Contract for consulting services- LSAMS development | $0.00 |
| DRI Management Systems, Inc. | DRI Management Systems, Inc. 1451 Quail Street, Suite 100 Newport Beach, CA 92660 Attn: President | Master contract and Software License Agreement | $9,200.00 |
| Eagle a/k/a EDI Integration Corp. | EDI Integration Corp. P.O. Box 4166 Crofton, MD 21114 Attn: Denise Carley | Default Reporting EDI software used to transmit to HUD | $0.00 |
| Fair Isaac Software, Inc. | Fair Isaac Software, Inc. 3550 Engineering Drive, Suite 200 Norcross, GA 30092 | Software Maintenance Agreement (Agreement to license LSAMS, Bankruptcy Management and Loan Event Tracking modules, along with certain modifications) | $0.00 |
| Fair Isaac Software, Inc. | Fair Isaac Software, Inc. 3550 Engineering Drive, Suite 200 Norcross, GA 30092 | Services agreement for BridgeLink (now called ScoreNet) - to be used in support of construction lending system, TCL | $0.00 |
| Gryphon Networks Corp. | Gryphon Networks Corp. c/o Gryphon Networks, Inc. 249 Vanderbilt Avenue Norwood, MA 02062 Attn: Contract Management | Master Services Agreement regarding Gryphon Call Advisor Services | $0.00 |

**Vendor/IT Contracts**

| Counter Party | Address/Contact Information | Description of Agreement | Proposed Cure Amounts |
|---|---|---|---|
| Lewtan Technologies, Inc. | Lewtan Technologies, Inc. 300 5th Avenue Waltham, MA 02451 | Standard License & Service Agreement, as supplemented | $0.00 |
| LXI Corp. | LXI Corp. 222 West Las Colinas Blvd. Suite 960 Irving, TX 75039 | License Agreement regarding Job Scheduling Software | $0.00 |
| McAfee AntiVirus | McAfee AntiVirus 3965 Freedom Circle Santa Clara, CA 95054 | Anti virus software for workstation | $0.00 |
| Objectif Lune, Inc | Objectif Lune, Inc c/o Objectif Lune, LLC 300 Broadacres Drive 4th Floor Bloomfield NJ 07003 | End User License Agreement for Planet Press- laser printing software | $0.00 |
| Patrick Townsend and Associates | Patrick Townsend and Associates 7700 Earling Street NE Olympia, WA 98506 | License Agreement for FTP software | $0.00 |
| PGF SOLUTIONS, INC. TECHNOLOGY SYSTEMS CONSULTING | PGF SOLUTIONS, INC. TECHNOLOGY SYSTEMS CONSULTING 2920 Stanway Ave. Douglasville, GA 30135 | Contract for consulting services- LSAMS development | $0.00 |
| Pro Data Computer Systems, Inc | Pro Data Computer Systems, Inc 2809 S 160th Street Suite 401 Omaha, NE 68130 | Software license agreement with basic support services | $0.00 |
| RJS Software | RJS Software 14041 Burnhaven Drive, Suite 120 Burnsville, MN 55337 | Winspool product for report generation for AS400 | $0.00 |
| SAS Institute Inc. | SAS Institute Inc. World Headquarters SAS Campus Drive Cary, NC 27513 | Master License Agreement | $10,681.45 |
| Softlanding Software | Softlanding Software 84 Elm St. Peterborough, NH 03458 | Software for managing code versions on AS400 | $0.00 |
| The PowerTech Group, Inc. | The PowerTech Group, Inc. 6703 South 234th Street Kent, WA 98032 | Access Agreement for software for Network Security, security audit and compliance monitor software | $0.00 |

**Vendor/IT Contracts**

| Counter Party | Address/Contact Information | Description of Agreement | Proposed Cure Amounts |
|---|---|---|---|
| American Security Insurance Company Standard Guaranty Insurance Company | American Security Insurance Company Standard Guaranty Insurance Company 260 Interstate North Circle, N.W. Atlanta, GA 30339 Attn: Compliance Plus Product Manager | Compliance Plus Insurance Administration Agreement, dated as of April 1, 2005, by and among American Security Insurance Company, Standard Guaranty Insurance Company and American Home Mortgage Servicing, Inc. | $0.00 |
| American Security Insurance Company Standard Guaranty Insurance Company | American Security Insurance Company Standard Guaranty Insurance Company 260 Interstate North Circle, N.W. Atlanta, GA 30339 Attn: Hazard Plus Product Manager | Hazard Plus Insurance Administration Agreement, dated as of April 1, 2005, by and among American Security Insurance Company, Standard Guaranty Insurance Company and American Home Mortgage Servicing, Inc. | $0.00 |
| ZC Sterling Insurance Agency, Inc. | ZC Sterling Insurance Agency, Inc. 210 Interstate North Parkway, N.W. Suite 400, Atlanta, GA. 30339 | Tax Outsource Vendor | $575,262.41 |

## EXHIBIT B

*THE FOLLOWING IS A LIST OF POTENTIAL EXECUTORY CONTRACTS THAT THE DEBTORS ARE POTENTIALLY SEEKING TO ASSUME AND ASSIGN ONLY THE LOAN SERVICING RIGHTS CONTAINED THEREIN; PROVIDED, HOWEVER, THE DEBTORS ARE SEEKING TO ASSUME AND ASSIGN THE LOAN SERVICING RIGHTS TO THE EXTENT SUCH RIGHTS ARE EXECUTORY.*

| NAME AND CONTACT INFORMATION OF COUNTERPARTY(IES) FOR NOTICE | NAME OF AGREEMENT | TYPE OF AGREEMENT/ ARRANGEMENT | PROPOSED CURE AMOUNT |
|---|---|---|---|
| If Owner:<br><br>Signature Bank<br>70 West 36th Street<br>15th Floor<br>New York, New York 10018<br>Attention: Debra M. Eannel<br><br>With a copy to:<br><br>Bank Hapoalim BM<br>1177 Avenue of the Avenues<br>New York, New York 10036<br>Attn: General Counsel | Servicing Agreement, dated as of March 4, 2004, by and between Signature Bank and Columbia National, Incorporated (currently known as American Home Mortgage Servicing, Inc.) | Loan Sale/Servicing Agreement | $0.00 |
| If to the RMBS Master Servicer and the Securities Administrator:<br><br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road<br>Columbia, Maryland 21045<br>ATTN: Corporate Trust Services - AHMIT 2005-4A<br><br>If to the Owner Trustee:<br><br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, Delaware 19890<br>ATTN: Corporate Trust Administration | RMBS Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Servicing, Inc., as RMBS Subservicer, and American Home Mortgage Acceptance, Inc., as RMBS Servicer | AHM Securitization | $0.00 |

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| If to the Indenture Trustee:<br><br>U.S. Bank, N.A.<br>One Federal Street<br>3rd Floor<br>Boston MA, 02110<br>ATTN: Corporate Trust Office | | | |
| In the case of the Securities Administrator:<br><br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road<br>Columbia, Maryland 21045<br>ATTN: Corporate Trust Services - AHMIT 2005-4A<br><br>In the case of the Owner Trustee<br><br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, Delaware 19890<br>ATTN: Corporate Trust Administration<br><br>In the case of the Indentured Trustee<br><br>U.S. Bank, N.A.<br>One Federal Street<br>3rd Floor<br>Boston MA, 02110<br>ATTN: Corporate Trust Office | HELOC Subservicing Agreement, dated as of October 7, 2005, among American Home Mortgage Investment Trust 2005-4A, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as HELOC Servicer, and American Home Mortgage Servicing, Inc., as HELOC Subservicer | AHM Securitization | $0.00 |

066585.1001

| NAME AND CONTACT INFORMATION OF COUNTERPARTY(IES) FOR NOTICE | NAME OF AGREEMENT | TYPE OF AGREEMENT/ ARRANGEMENT | PROPOSED CURE AMOUNT |
|---|---|---|---|
| If to the RMBS Master Servicer and the Securities Administrator:<br><br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road<br>Columbia, Maryland 21045<br>ATTN: Corporate Trust Services - AHMIT 2005-4C<br><br>If to the Owner Trustee:<br><br>Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, Delaware 19890<br>ATTN: Corporate Trust Administration<br><br>If to the Indenture Trustee:<br><br>U.S. Bank., N.A.<br>One Federal Street<br>3rd Floor<br>Boston MA, 02110<br>ATTN: Corporate Trust Office | Servicing Agreement, dated as of October 7, 2005, among Wells Fargo Bank, N.A., as RMBS Master Servicer, American Home Mortgage Investment Trust 2005-4C, as Issuer, U.S. Bank National Association, as Indenture Trustee, American Home Mortgage Acceptance, Inc., as Seller, and American Home Mortgage Servicing, Inc., as RMBS Servicer | AHM Securitization | $0.00 |

| NAME AND CONTACT INFORMATION OF COUNTERPARTY(IES) FOR NOTICE | NAME OF AGREEMENT | TYPE OF AGREEMENT/ ARRANGEMENT | PROPOSED CURE AMOUNT |
|---|---|---|---|
| If to the Purchaser<br><br>Aegon USA Real Estate Services<br>400 West Market St.<br>5th Floor<br>Louisville KY 40232<br>ATTN: Madonna Ammons | Loan Sale and Servicing Agreement with Aegon USA Real Estate Services | Loan Sale/Servicing Agreement | $0.00 |
| If to the Purchasers<br><br>Phoenix Founders Inc.<br>38 Prospect Street<br>2d Floor<br>Hartford CT 06115<br>ATTN: Mark Paperella | Loan Sale and Servicing Agreement with Phoenix Founders Inc. | Loan Sale/Servicing Agreement | $0.00 |
| If to the Purchaser<br><br>Wells Fargo Corporate Trust Services<br>Wells Fargo Bank Minnesota, N.A.<br>9062 Old Annapolis Road<br>Columbia MD 21045<br>ATTN: Quonda Leftwich | Loan Sale and Servicing Agreement with Wells Fargo Corp. Tr. Services | Loan Sale/Servicing Agreement | $0.00 |

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| In the case of the Assignor,<br><br>UBS Real Estate Securities Inc.<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attention: Eileen Lindblom<br><br>In the case of the Assignee,<br><br>Mortgage Asset Securitization Transactions, Inc.<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Attention: Legal Department | Assignment, Assumption and Recognition Agreement, dated as of December 29, 2005, among UBS Real Estate Securities Inc. (the "Assignor"), Mortgage Asset Securitization Transactions, Inc. (the "Assignee"), American Home Mortgage Corp. (the "Company") and American Home Mortgage Servicing, Inc. (the "Servicer") | Third Party Securitization (MARM 2005-8) | $0.00 |
| In the case of the Trustee<br><br>HSBC Bank USA<br>452 Fifth Avenue<br>New York, New York 10018<br><br>In the case of the Custodian<br><br>Deutsche Bank National Trust Co.<br>1761 East St. Andrew Place<br>Santa Ana, California 92705<br>Attention: Mortgage Custody- DB07HC<br><br>In the case of the Servicer<br><br>Countrywide Home Loans, Inc.<br>4500 Park Granada | Custodial Agreement, dated as of June 1, 2007, by and among HSBC Bank USA, National Association, as Trustee, Deutsche Bank National Trust Company, as Custodian, American Home Mortgage Servicing, Inc., as a Servicer, and Countrywide Home Loans, Inc., Countrywide Home Loans Servicing LP, as a Servicer | Third Party Securitization (DBALT 2007-1) | $0.00 |

066585.1001

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| Calabasas, California 91302<br><br>Countrywide Home Loans Servicing, Inc.<br>400 Countrywide Way<br>Simi Valley, California 93065<br><br>In the case of the Depositor<br><br>ACE Securities Corp<br>6525 Morrison Boulevard<br>Suite 318<br>Charlotte, North Carolina 28211<br>Attention: Deutsche Alt-A Securities<br>Mortgage Loan Trust, Series 2007-1<br><br>In the case of the Seller<br><br>DB Structured Products, Inc.<br>60 Wall Street<br>New York, New York 10005<br>Attention: Deutsche Alt-A Securities<br>Mortgage Loan Trust, Series 2007-1<br><br>In the case of the Master Servicer<br><br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road<br>Columbia, Maryland 21045<br>Attention: Deutsche Alt-A Securities, Inc.,<br>2007-1 | | | |

DB02:6262606.1                                    066585.1001

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| In the case of Assignor,<br><br>DB Structured Products, Inc.<br>60 Wall Street New York, New York 10005<br>Attention: Susan Valenti<br><br>In the case of Assignee,<br><br>ACE Securities Corp.<br>6525 Morrison Boulevard, Suite, 318<br>Charlotte, North Carolina 28211<br>Attention: Doris J. Hearn<br><br>In the case of the Master Servicer,<br><br>Wells Fargo Bank, N.A.<br>9062 Old Annapolis Road Columbia, Maryland 21045<br>Attention: Client Manager – DBALT 2007-1<br>Telecopier: (410) 715-2380 | Assignment, Assumption and Recognition Agreement, dated as of June 29, 2007, among DB Structured Products, Inc., as Assignor, ACE Securities Corp., as Assignee, and American Home Mortgage Servicing, Inc., as Servicer, and ackn owledged by Wells Fargo Bank, N.A., as Master Servicer | Third Party Securitization (DBALT 2007-1) | $0.00 |

DB02:6262606.1

066585.1001

| Name and Contact Information of Counterparty(ies) for Notice | Name of Agreement | Type of Agreement/ Arrangement | Proposed Cure Amount |
|---|---|---|---|
| If to Purchaser:<br><br>Charlotte Fire Department Credit Union<br>2100 Commonwealth Ave.<br>Charlotte, NC 28205<br>Attn: Debbie Trotter | Loan Sale and Servicing Agreement, dated as of June 16, 2007, by and between American Home Mortgage Corp., American Home Mortgage Servicing, Inc., and Charlotte Fire Department Credit Union | Loan Sale/Servicing Agreement | $0.00 |
| If to the Purchaser<br><br>EMC Mortgage Corporation<br>909 Hidden Ridge Drive<br>Suite 200<br>Irving, Texas 75038<br>Attention:  Scott Samlin, SVP and General Counsel<br>Via Facsimile Transmission: 972-831-2555<br><br>If to the Master Servicer<br><br>Wells Fargo Bank Minnesota, National Association<br>9062 Old Annapolis Road<br>Columbia, Maryland 21045<br>Attention:    Mike Watchke – EMC/FNMA<br>Via Facsimile Transmission: 410-884-2360 | Sale and Servicing Agreement, dated as of February 1, 2003, by and between Columbia National, Incorporated (currently known as American Home Mortgage Servicing, Inc.), as Seller and Servicer, and EMC Mortgage Corporation, as Purchaser | Loan Sale/Servicing Agreement | $0.00 |

| NAME AND CONTACT INFORMATION OF COUNTERPARTY(IES) FOR NOTICE | NAME OF AGREEMENT | TYPE OF AGREEMENT/ ARRANGEMENT | PROPOSED CURE AMOUNT |
|---|---|---|---|
| If to the Purchaser to:<br><br>Merrill Lynch MTS<br>4600 Regents Blvd.<br>Suite 200<br>Irving TX 75063 | Loan Sale and Servicing Agreement with Merrill Lynch | Loan Sale/Servicing Agreement | $0.00 |
| If to the Purchaser<br><br>Goldman Sachs Mortgage Company<br>100 Second Avenue South<br>Suite 200 North<br>St. Petersburg, Florida 33701<br>Attention: Sally S. Bartholmey<br>Tel: (727) 825-3829<br>Fax: (727) 493-0678<br><br>With a Copy to<br><br>Goldman Sachs Mortgage Company<br>85 Broad Street<br>New York, New York 10004<br>Attention: Eugene Gorelik<br>Tel: (212) 902-5008<br>Fax: (212) 902-3000 | Mortgage Loan Sale and Servicing Agreement, dated as of December 1, 2005, between American Home Mortgage Corp., as Seller, American Home Mortgage Servicing, Inc., as Servicer, and Goldman Sachs Mortgage Company, as Purchaser | Loan Sale and Servicing Agreement | $0.00 |

066585.1001

## Appendix B

### Objection to UBS Stay Motion

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x
In re:                                                       :  Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                        :  Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :
                                                             :  Jointly Administered
                                                             :
Debtors.                                                     :  Ref. Docket No. 1778
----------------------------------------------------------- x

## DEBTORS' OPPOSITION TO THE MOTION AND JOINDER OF UBS REAL ESTATE SECURITIES INC. TO EMERGENCY MOTION OF DB STRUCTURED PRODUCTS, INC. FOR LIMITED STAY PENDING APPEAL

The debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), by and through their undersigned counsel, hereby request that this Court deny the motion [Docket No. 1778] (the "Stay Motion") by UBS Real Estate Securities Inc. ("UBS") for a limited stay pending appeal of the Court's order entered October 30, 2007 (the "Sale Order"), which approved, among other things, the Debtors' sale and assignment of the Debtors' rights to service loans (the "Servicing Rights") as set forth in the terms of that certain Master Loan Purchase and Servicing Agreement between certain of the Debtors and UBS (the "MLPSA"). In support of their opposition to the Stay Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## PRELIMINARY STATEMENT

1.      UBS fails to meet its very high burden to justify the extraordinary remedy of a stay pending appeal. To obtain a stay, UBS must satisfy the same requisites that are required for obtaining a preliminary injunction – a likelihood of success on the merits, the threat of irreparable harm, the absence of any harm to the non-appealing parties and a showing that public interest weighs in favor of a stay. None are present here. UBS does not own any loans that are serviced by the Debtors and governed by the Sale Order – having previously conveyed those loans to securitization trusts, the trustees of which have consented to entry of the Sale Order. Therefore, UBS cannot succeed in an appeal of the Sale Order, because for among other reasons, it is not a "person aggrieved" by the Sale Order and therefore has no standing to appeal; nor is there any risk of harm to UBS, much less irreparable harm, if the Sale Order is not stayed. When balanced against the risk of significant harm to the Debtors and their estates if the Sale Order is stayed and the strong public interest in an orderly transition of the Debtors' servicing business, a stay of the Sale Order is inappropriate, and the Stay Motion should be denied.

## OBJECTION

2.      A stay pending appeal constitutes extraordinary relief for which the moving party carries a heavy burden. Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985) ("[o]n a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy"); Belcher v. Birmingham Trust Nat'l Bank, 395 F.2d 685, 686 (5th Cir. 1968) (stay pending appeal is an "extraordinary remedy"). Stays pending appeal "are a disfavored remedy because they interrupt the ordinary process of judicial review and postpone relief for the prevailing party." Dellums v. Smith, 577 F. Supp. 1456, 1457 (N.D. Cal. 1984), rev'd on other grounds, 797 F.2d 817 (9th Cir. 1986).

3.     Federal Rule of Bankruptcy Procedure 8005 governs appeals from an order of the Bankruptcy Court and authorizes the Court under limited circumstances to stay an order pending an appeal therefrom. Fed. R. Bankr. P. 8005. In this Circuit, the applicable legal standard for determining whether to grant a stay is similar to the standard for a preliminary injunction request. Specifically, the Third Circuit Court of Appeals has held that courts must consider the following four factors in deciding whether to issue a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and
>
> (4) where the public interest lies.

Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also, In re ANC Rental Corp., 2002 WL 1058196, at *2 (D. Del. May 22, 2002). If the movant *fails to make a showing on any one of these four factors*, the court may deny the stay. Id. (citing In re Blackwell, 162 B.R. 117, 120 (E.D. Pa. 1993)) (emphasis added).

*i.     Likelihood of success on the merits.*

UBS cannot succeed on the merits because it has no standing to appeal the Sale Order.

4.     Simply put, UBS cannot succeed on the merits of the appeal because it has no standing to appeal the Sale Order. The Sale Order has no direct, adverse pecuniary effect on UBS. In re Combustion Engineering, Inc., 391 F.3d 190, 214 (3d Cir. 2004). "Appellate standing in bankruptcy cases is limited to 'persons aggrieved'" by the entry of an order by the bankruptcy court. In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir. 2000); Travelers Ins. Co. v. H.K. Porter Co., Inc., 45 F.3d 737, 741 (3d Cir. 1995); In re Dykes, 10 F.3d 184, 187 (3d

Cir. 1993). The "person aggrieved" standard is met when a bankruptcy court's order (i) diminishes the property of a party, (ii) increases the burden on a party, or (iii) impairs the rights of a party. PWS Holding, 228 F.3d at 249. At its essence, "the persons aggrieved test now exists as a prudential standing requirement that limits bankruptcy appeals to persons whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court." Combustion Engineering, 391 F.3d at 214 (citing In re Dykes, 10 F.3d at 187) (internal punctuation omitted). The "person aggrieved" standard, accordingly, is "more stringent than the constitutional test for standing." Travelers Ins. Co., 45 F.3d at 741. "Standing in bankruptcy matters turns upon the sections of the code that are asserted." In re ANC Rental Corp., 280 B.R. 808, 818 (D. Del. 2002) (citing In re James Wilson Assoc., 965 F.2d 160, 168 (7th Cir. 1992).

5.     Further, as the Third Circuit noted, the "person aggrieved" requirement for standing at the appellate level is far more limited than § 1109 of the Bankruptcy Code, which gives "any party in interest" the right to be heard at the trial level. "[Section 1109]…confers broad standing at the trial level. However, courts do not extend that provision to appellate standing…." PWS Holding, 228 F.3d at 248-49, citing Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988) (citation omitted).

6.     UBS is not a "person aggrieved," and its pecuniary interests are unaffected by the Sale Order. The MLPSA provides, *inter alia*, for the sale of loans by the Debtors to UBS on a servicing-retained basis. Loan sales were evidenced by a trade confirmation (the "Trade Confirmation") with the Debtors, whereby UBS would purchase the loans scheduled on each Trade Confirmation from the Debtors on a servicing-retained basis. UBS has securitized all the loans it had purchased under the MLPSA by transferring both the loans and any related servicing provisions of the MLPSA to securitization trusts, pursuant to certain Assumption, Assignment

and Recognition Agreements (the "AAR Agreements"). Section 1 of the AAR Agreements

provide, in pertinent part (the italicized portion does not appear in all AAR Agreements):

> 1. a. [UBS] hereby conveys, sells, grants, transfers and assigns to Assignee all of the right, title and interest (other than those rights specifically retained by [UBS] pursuant to this Agreement) of [UBS], in, to and under (a) those certain Mortgage Loans listed on Exhibit A attached hereto (the "Mortgage Loans") and (b) solely with respect to the servicing provisions as they relate to the Mortgage Loans (as limited in Section 1(c) below), that certain Master Loan Purchase and Servicing Agreement dated as of December 1, 2005, by and between [UBS], the Company, and the Servicer and any related amendments thereto (the "Servicing Agreement"), attached hereto as Exhibit B[.]
>
> ...
>
> c. [UBS RESI] specifically reserves and does not assign to the Assignee hereunder those rights under the Servicing Agreement that do not relate to the servicing of the Mortgage Loans (including without limitation, the representations and warranties made by the Company and the document delivery requirements of the Company and the remedies (including indemnification) available for breaches thereof, *but excluding any remedies under section 7.06 of the Servicing Agreement [EPD provision] which shall be assigned by the [UBS RESI] to [Mortgage Asset Securitization Transactions, Inc.] hereby).*

7.      As evidenced by the above, through the AAR Agreements, UBS has

already transferred its interest in all of the mortgage loans it owned under the MLPSA, as well as

the servicing related provisions of the MLPSA, to certain securitization trusts. The securitization

trusts, acting through their trustees, filed objections to the sale of the Debtors' mortgage loan

servicing business to the Buyer (the "Sale"), actively participated in the hearing to approve the

Sale (the "Sale Hearing") and ultimately consented to the entry of the Sale Order.

8.      UBS suffers no diminution in property, no increase in burden and no

impairment of rights as a result of the Sale Order because UBS no longer owns any mortgage

loans serviced by the Debtors, including any right, title, or interest in the servicing provisions of

the MLPSA.

9.      Additionally, the Sale Order, and the asset purchase agreement (the

"APA") entered into between the Debtors and AH Mortgage Acquisition Co., Inc. (the "Buyer")

approved by the Sale Order, have no effect on any rights under the MLPSA that do not relate to the servicing of mortgage loans.  The Sale Order does not assume and assign or transfer the MLPSA with respect to the non-servicing related provisions and, further, has no effect on the claims, if any, UBS may have against the Debtors with respect to those provisions.  Since the Sale Order only affects the servicing provisions of the MLPSA, which UBS has previously transferred, and leaves unimpaired whatever rights UBS may have under the MLPSA against the Debtors, the Sale Order has no direct, adverse effect on the pecuniary interest of UBS.  Therefore, even with respect to any remaining claims under the MLPSA, UBS cannot show it is a "person aggrieved" by the Sale Order and has no standing to appeal.

> Even if UBS had standing to appeal, no clear error was committed.

10.    To succeed on appeal, a party seeking a stay pending appeal must first demonstrate that this Court committed clear error in approving the Sale.  An appellate court would need to be left with the "'definite and firm conviction that a mistake has been committed.'"  In re Del. & Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

11.    Numerous objections to the Sale were filed by numerous interested parties, including two objections and a reservation of rights from UBS.  The Court held a week-long Sale Hearing.  As was obvious to everyone in the courtroom throughout the Sale Hearing, this Court deliberated with great care after considering the evidence presented and the arguments of counsel,[2] and ultimately ruled, based both upon its own findings of fact and upon several theories of applicable law, in the Debtors' favor.  The Debtors believe that the record amply

---

[2] Perhaps in recognition of its limited stake in the Sale, UBS played a very minor role in the Sale Hearing, choosing to offer no testimony, nor to cross-examine any of the Debtors' witnesses, in support of its position.

justifies the Court's decision approving the Sale. Yet, even assuming, *arguendo*, that reasonable

minds can differ, UBS must demonstrate that the Court's factfinding constitutes "clear error."

Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views

of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Based on

this very high standard of review on appeal, the Debtors submit that UBS could not demonstrate

a likelihood of success on the merits of its appeal.

        12.     Through the Stay Motion, UBS joins in and incorporates by reference the

arguments made in the Emergency Motion of DB Structured Products, Inc. ("DBSP") for

Limited Stay Pending Appeal [D.I. 1713] (the "DBSP Motion"), which was withdrawn by DBSP

on November 6, 2007 [D.I. 1830]. The Debtors incorporate by reference their Omnibus

Response to Certain Objections to the Sale of Certain Assets and the Assumption and

Assignment of Executory Contracts Relating to the Debtors' Loan Servicing Business [D.I.

1443] (the "Debtors' Sale Brief"), and the arguments made on the record at the Sale Hearing.[3]

        13.     The DBSP Motion raised essentially two grounds for appeal. First, DBSP

argued that the sale of servicing rights under that certain Master Mortgage Loan Purchase and

Servicing Agreement between the Debtors and DBSP (the "DB MLPSA") pursuant to § 363 of

the Bankruptcy Code in contravention of a contractual anti-assignment provision is directly at

odds with the Third Circuit's decision in Integrated Solutions, Inc. v. Service Support

---

[3] The Debtors reserve their right, as appellees, to raise any other or further arguments in support of the Sale Order that are supported by the law and the evidentiary record, whether or not such arguments were previously raised. Further, because the Stay Motion simply joined in and incorporated by reference the arguments of DBSP, which deal with provisions of a contract between DBSP and the Debtors and not the MLPSA to which UBS is a party, the Debtors reserve their right to assert any other and further arguments in response to issues raised by UBS at the hearing on the Stay Motion, which will be the first time the Debtors will have an opportunity to hear such arguments.

Specialties, Inc., 124 F.3d 487 (3d Cir. 1997).[4]  Second, DBSP argued that the Court misapplied

the Gardinier factors and erroneously applied the "cross-default rule" in determining that the

Embedded Servicing Agreement (as defined in the Debtors' Sale Brief) was severable from the

DB MLPSA.  Both arguments are without merit.

          14.    The Integrated Solutions case is inapposite.  In that case, a purchaser

obtained prejudgment tort claims through a § 363 sale from a chapter 7 trustee and then sued on

the claims.  The defendants moved to dismiss for lack of standing, arguing that applicable state

law prohibited the assignment of prejudgment tort claims and, accordingly, that the chapter 7

trustee was the only party with standing to bring the claims.  The purchaser argued that §§ 704(1)

(requiring chapter 7 trustee to expeditiously collect and reduce to money property of the estate)

and 363(b)(1) (permitting trustee to sell property of the estate outside the ordinary course of

business) of the Bankruptcy Code pre-empted state law restrictions on the transfer of the tort

claims, which were property of the bankruptcy estate.  The bankruptcy court disagreed with the

purchaser and granted the defendants' motion to dismiss.  On appeal, the Third Circuit

considered the following, narrow question: "Did Congress intend to preempt state law

restrictions on the assignability of tort claims under federal bankruptcy law?"  Integrated

Solutions, 124 F.3d at 490.  The court found nothing in §§ 704(1) or 363(b)(1) expressly

authorizing the trustee to sell property free of state law restrictions and nothing in the legislative

history indicating Congress intended such a result.  This was underscored by the fact that other

provisions of the Bankruptcy Code, including § 363(l) (invalidating *ipso facto* provisions),

expressly displace otherwise applicable law.  Accordingly, the court concluded that "neither

---

[4] The Integrated Solutions case does not appear in any of DBSP's papers.  DBSP raised the case for the first time in oral argument at the Sale Hearing.

§ 363(b)(1) nor § 704(1) indicates a specific congressional intent to preempt state laws limiting

the assignability of tort claims belonging to the estate." Integrated Solutions, 124 F.3d at 494.

        15.    At issue in this case are *contract rights*, not prejudgment tort claims.

Unlike prejudgment tort claims, contract rights are inherently assignable under state law.  Indeed,

under New York state law, which governs the MLPSA, contractual provisions that restrict

alienability are narrowly construed.  Thus, for example,

> [f]or a contractual clause forbidding or restricting an assignment of rights
> thereunder to reveal the intent necessary to *preclude* the power to assign, or cause
> an assignment violative of contractual provisions to be wholly *void*, such clause
> must contain express provisions that any assignment shall be void or invalid if not
> made in a certain specified way.  Such must specifically eliminate the power as
> well as the right to assign the contract in violation of its bar or restrictions,
> *otherwise the original obligor is given only the right to damages for its breach,*
> *but does not [sic] render the assignment ineffective.*

University Mews Assocs. v. Jeanmarie, 471 N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983) (emphasis

added, citations omitted).  The UBS contractual anti-assignment provision does not *preclude*

assignment under this test.  It simply provides that the Debtors "shall not" assign without UBS's

consent.  Thus, at best, UBS has a claim for money damages for the Debtors' breach of the anti-

assignment provision, which it is free to assert against the Debtors' bankruptcy estates, but which

does not support a stay pending appeal.

        16.    Even if the MLPSA's "anti-assignment" provision precluded assignment

of the Servicing Rights under New York state law, Integrated Solutions still does not control in

light of more recent, directly applicable Third Circuit precedent.  As discussed in the Debtors'

Sale Brief, the In re Fleming Cos. decision provides that "the bankruptcy court has discretion to

excise or waive a bargained-for element of a contract" and "can excise or refuse enforcement of

terms of a contract in order to permit assignment," 499 F.3d 300, 305 (3d Cir. 2007), which

confirms the federal bankruptcy policy interest in permitting the free assignment of contract

rights to maximize the value of the bankruptcy estate for the benefit of creditors.  Although the

rule in Fleming was derived from cases decided under various subsections of § 365, the Third

Circuit did not rely on any particular subsection of § 365 in reaching its conclusion that the

bankruptcy court has the power to modify contract rights.  Nor is there any principled reason to

believe that the bankruptcy court's broad equitable powers are confined to "executory contracts"

subject to § 365 and do not apply to non-executory contracts subject to § 363.  Indeed, that § 365

and § 363 principles are somewhat interchangeable is apparent from the Folger Adam Security,

Inc. v. DeMatteis/MacGregor JV decision, which applied the § 365 *cum onere* principle to a sale

of contract rights under § 363 to arrive at its conclusion that the right to payment under a contract

may not be sold free and clear of contractual defenses such as recoupment.  See 209 F.3d 252,

264 (3d Cir. 2000) ("Bankruptcy law generally does not permit a debtor or an estate to assume

the benefits of a contract and reject the unfavorable aspects of the same contract.").  The Debtors

submit that, after balancing the interests of UBS with the interests of the Debtors and their

creditors as required by the Fleming opinion, the Court acted within its discretion in permitting

sale of the Servicing Agreement notwithstanding any contractual "anti-assignment" provision.

       17.     The second alleged ground for appeal, *i.e.*, that the Court erroneously

found the Servicing Rights severable from the MLPSA under state law, is no more availing than

the first.  Again, since UBS has already agreed to sever and transfer the Servicing Rights through

the AARs this argument borrowed from the DBSP Motion is particularly unavailing to UBS.

Further, as discussed in the Debtors' Sale Brief and as evidenced by the testimony at the Sale

Hearing, the nature and purpose of the origination/sale obligations and the servicing obligations

under the MLPSA were separate and distinct (and were borne by distinct legal entities, the

"Seller" and "Servicer," respectively), and the consideration underlying such obligations was

readily apportionable and not economically interrelated. This is so notwithstanding the purported cross-indemnity and "waterfall" provisions, which the Court concluded were insufficient in themselves to render the two halves of the MLPSA "economically interrelated" so as to thwart the benefit of UBS's bargain if they were severed. That the Court, in reaching this conclusion, relied heavily on cases applying the "cross-default rule" in the § 365 context is a distinction without a difference. As stated by Chief Judge Walrath in the Shaw Group v. Bechtel Jacobs Co. (In re IT Group, Inc.) case, the cross-default rule is simply a necessary corollary of the *cum onere* principle. 350 B.R. 166, 177 (Bankr. D. Del. 2006). Though the *cum onere* principle is most typically invoked in relation to § 365, as discussed above, the Third Circuit has applied it to the sale of contract rights under § 363. See Folger Adam, 209 F.3d at 264. Thus, there is no principled reason to believe that the cross-default rule, the necessary corollary of the *cum onere* principle, does not similarly apply in a § 363 context.

*ii.      Irreparable harm to the moving party.*

18.      As stated above, the Debtors do not service *any* loans owned by UBS through the MLPSA. UBS previously transferred its interest in all such mortgage loans to securitization trusts, and UBS's rights are not affected by the Sale Order because UBS had previously transferred the servicing-related provisions of the MLPSA, along with the loans serviced by the Debtors.

19.      Even if UBS had standing to object to the transfer of the Servicing Rights, no irreparable harm will be suffered by UBS to justify the grant of a stay pending appeal. The only identified harm – that absent a stay § 363(m) may render its appeal moot – is insufficient, by itself, to merit a stay pending appeal. Westinghouse Elec. Corp., 949 F.2d at 658 (holding that the fact that the decision on the stay may be dispositive of the appeal does not by itself

justify "pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant" absent a stay); In re Trans World Airlines, Inc., 2001 Bankr. LEXIS 723, at *28 (Bankr. D. Del. Mar. 27, 2001) (holding that a threatened loss of appellate rights under § 363(m) is not sufficient, without more, for a showing of irreparable harm); In re Edwards, 228 B.R. 573, 580 (Bankr. E.D. Pa. 1999) (the fact that absent a stay, appeal will be rendered moot under § 363(m), is not sufficient by itself to meet the movant's burden of establishing irreparable harm); In re Baldwin United Corp., 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984) (finding that if the court were to accept the argument that § 363(m) is sufficient for a showing of irreparable harm, then every order permitting the sale of property under § 363(b) would be stayed pending appeal, a result clearly contrary to the purpose of § 363(m)). UBS has failed to articulate any harm it would suffer without a stay, let alone irreparable harm.[5]

        20.     Other than the potential for mootness (again, an argument borrowed from the DBSP Motion), it is unclear what rights UBS claims are affected by transfer of the Servicing Rights, since UBS no longer owns any loans serviced by the Debtors under the MLPSA, and UBS has failed to articulate any other harm. The AARs demonstrate that UBS has no interest in the Servicing Rights. The owners of the loans – the securitization trusts – have consented to the transfer of the Servicing Rights to the Buyer pursuant to § 365. The Debtors and their constituents who supported the Sale expended significant time and effort negotiating with the trustees of those securitization trusts and ultimately resolved all of their sale objections, a result that was announced to the Court at the Sale Hearing. To the extent that UBS seeks to affect the

---

[5] To the extent UBS argues that it could suffer monetary damages absent a stay, such damages would be nominal, at best. Further, monetary damages incurred do not constitute irreparable harm. Sampson v. Murray, 415 U.S. 61, 90 (1974); Manakee Prof'l. Med. Transp. Serv. v. Shalala, 71 F.3d 574, 581 (6th Cir. 1995); Tri County Home Health Servs., Inc. v. United States HHS (In re Tri County Home Health Servs., Inc.), 230 B.R. 106, 112 (Bankr. W.D. Tenn. 1999).

interest of the trustees of the securitized trusts or to undermine the effectiveness of the trustees'

stipulation with the Debtors, UBS has no right (as the previous owner of the loans) to do so.

iii.    *Irreparable harm to the Debtors.*

        21.     UBS erroneously suggests in the Stay Motion that a stay pending appeal

can be fashioned that would stay the effectiveness of the Sale Order solely as regarding the

Servicing Rights, and that such stay would not affect the Debtors' ability to close the Sale.

However, the APA requires, as a condition to the Buyer closing the Sale, that the Sale Order has

been entered, has become final, and is not subject to any stay of effectiveness. APA, at § 8.1(b).

Accordingly, the APA as submitted with the Sale Order states that any stay of the Sale Order

pending appeal authorizes the Buyer to not consummate the Sale in its entirety, even if the only

issue on appeal is the Debtors' right to transfer the Servicing Rights to the Buyer.

        22.     The Court is certainly aware that there is an immediate need for the

Debtors to complete a sale of their servicing business. If the Buyer seeks to exercise its rights

under the APA to walk away from the Sale based upon the Sale Order not becoming a final,

unstayed order, the consequences to the estates would be dire. Parties, including federal

agencies, would likely seek to terminate their servicing agreements with the Debtors. Because

the Debtors are no longer originating mortgage loans, the value of the Debtors' servicing rights

would continue to decline based upon ordinary business factors (such as the payment and

refinancing of mortgage loans) as well. If the Buyer were unwilling to close the Sale in the face

of a stay of the Sale Order, all value from the Debtors' servicing business could be lost. When

viewed in contrast to the total absence of harm to UBS, which owns no loans that are serviced by the Debtors, a stay pending appeal is inappropriate.[6]

*iv.    Public Interest.*

23.    An appeal of the Sale Order would center upon whether the Debtors are entitled to transfer mortgage loan servicing rights for fair value, or whether UBS (which has no interest in the loans or the Servicing Rights) is entitled to priority treatment of claims it may retain as the original party to the MLPSA.  If the Sale closes, UBS *arguably* could find that its appellate rights (to the extent any exist) are moot.  Conversely, if the Sale does not close because a stay is granted and the Buyer is unwilling to close, hundreds of thousands of consumers whose mortgages are serviced by the Debtors stand to be harmed.

24.    If a closing occurs under the APA, servicing of loans will continue uninterrupted.  However, if a stay were granted and the Debtors were unable to close, all of the stability that has been negotiated for under the APA would be replaced by chaotic litigation with numerous parties, which the Debtors would have to fight with dwindling resources.  These circumstances could have serious negative consequences on the servicing of consumers' loans. As such, a stay, and the potential consequences arising thereafter if the Buyer were to exercise its right to not close the Sale, would seriously harm the public interest, both in terms of the creditors of the Debtors which would potentially lose out on significant value obtained by the estates through closing of the Sale, and in terms of the individual customers of the Debtors who would

---

[6] Indeed, the total absence of harm suggests that UBS's true motive is to simply obtain more preferable treatment for alleged claims under the MLPSA, which claims were found by the Court to be wholly unrelated to the Servicing Rights.

face further uncertainty regarding the status of the servicer of their home loans, who among other things pays taxes and insurance on their behalf.

v.    *If the Court is inclined to grant a stay, the posting of a bond should be required.*

25.    UBS has not shown and cannot establish any of the requisites for a stay pending appeal.  However, if the Court were to grant a stay, UBS should be required to post a bond to protect the Debtors and the other parties that support the sale against the potential for loss resulting from the stay.

26.    The purpose of a bond is to protect the non-appealing parties from *potential* losses resulting from the stay.  In re United Merch. & Mfrs., Inc., 138 B.R. 426, 430 (D. Del. 1992) (citing In re Alwan Bros. Co., 112 B.R. 294, 296 (Bankr. C.D. Ill. 1990)); see Normco., 1997 WL 695722, at *2 (citing Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980) (the purpose of a bond is to secure the opposing party from loss resulting from a stay of execution).  The bond is protective; there is no requirement that the adverse parties demonstrate *actual* losses that will result from a stay.

27.    As stated above, the Buyer could seek to invoke provisions of the APA that arguably authorize the Buyer not to close on the sale if a stay is granted.  A failure to close the sale would potentially result in the Debtors' estates losing all value for the servicing rights.  To the extent the Stay Motion has any merit, and the Court were inclined to grant the stay pending appeal, the appropriate amount of a bond to secure the Debtors from loss is the full Purchase Price (as defined in the APA) of approximately $500 million.  To the extent UBS intends to appeal the Sale Order and put the entire sale process in jeopardy, it is only fair for UBS to bear the risk that it foists on the estates if a closing will not subsequently occur.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court deny the Stay

Motion or, in the alternative, require the posting of a bond in the amount of $500 million, and

grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      November 8, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I, Patrick A. Jackson, Esquire, hereby certify that on this 27th day of May, 2008, I caused

a true and correct copy of the foregoing **APPENDIX IN SUPPORT OF ANSWERING**

**BRIEF OF APPELLEES AMERICAN HOME MORTGAGE HOLDINGS, INC., ET AL.,**

to be filed with the Clerk of the Court using CM/ECF, which will send notification that such

filing is available for viewing and downloading to the following counsel of record:


William P. Bowden (wbowden@ashby-geddes.com)
Sean T. Greecher (sgreecher@ycst.com, bank@ycst.com)
Amanda Marie Winfree: (awinfree@ashby-geddes.com**)**


I further certify that I have served the parties listed on the service list below in the

manner indicated.

/s/ Patrick A. Jackson
Patrick A. Jackson


William P. Bowden, Esq.
Amanda M. Winfree, Esq.
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(UBS Securities LLC; Morgan Stanley; CIFG)
(DB Structured)
**Hand Delivery**

Andrew J. Gallo, Esq.
Bingham McCutchen
150 Federal Street
Boston, MA 02110
**Federal Express**

Steven Wilamowsky, Esq.
Bingham McCutchen
399 Park Avenue
New York, NY 10022-4689
(DB Structured)
**Federal Express**

DB02:6843752.2                                                          066585.1001