## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, | ) | |
| INC., a Delaware corporation, *et al.*, | ) | Case No. 07-11047 (CSS) |
| | ) | |
| Debtors, | ) | Jointly Administered |
| _____ _____ | ) | |
| | ) | |
| DB STRUCTURED PRODUCTS, INC.. | ) | C.A. No. 07-00773 (JJF) |
| | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, | ) | |
| INC., a Delaware Corporation, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ _____ | ) | |

## REPLY BRIEF OF APPELLANT DB STRUCTURED PRODUCTS, INC.

| | |
|---|---|
| **BINGHAM McCUTCHEN LLP** | **ASHBY & GEDDES, P.A.** |
| Steven Wilamowsky | William P. Bowden (#2553) |
| 399 Park Avenue | Amanda M. Winfree (#4615) |
| New York, NY 10022 | 500 Delaware Avenue, 8th Floor |
| (212) 705-7000 | P.O. Box 1150 |
| | Wilmington, DE 19899 |
| Andrew J. Gallo | (302) 654-1888 |
| 150 Federal Street | |
| Boston, MA 02110 | |
| (617) 951-8117 | |

*Attorneys for Appellant DB Structured Products, Inc.*

Dated: June 11, 2008

# TABLE OF CONTENTS

TABLE OF CITATIONS................................................................................ii

SUMMARY OF REPLY..............................................................................1

ARGUMENT.............................................................................................3

    I.      DBSP'S Arguments Are Properly Before The Court On Appeal...........................3

          A.    DBSP Expressly Declined To Challenge the Debtors'
               Contention That The MLPSA Is Not Executory........................................3

          B.    The Bankruptcy Court Necessarily Ruled That The
               MLPSA Is Not Executory................................................................5

          C.    The Bankruptcy Court's Alternative Ruling Does Not
               Insulate The Ruling From Appellate Review.............................................5

    II.     Nothing In Section 363 Of The Bankruptcy Code Overrides
        Restrictions On Assignment.................................................................6

          A.    Controlling Third Circuit Authority Precludes The Debtors'
               Arguments Under Section 363(l)........................................................6

          B.    The Sale Cannot Be Justified Under Section 363(f)(5)..............................8

    III.    Whether the MLPSA Constitutes A Single Agreement Is Irrelevant,
        Given That The MLPSA Is Not Executory: Even If Divisible,
         It Remains Enforceable.....................................................................10

    IV.    The MLPSA Is A Single Agreement Under New York Law..............................11

          A.    The Bankruptcy Court's Analysis Disregarded Key
               Elements of the MLPSA...................................................................11

           B.    The MLPSA Is A Single Agreement Under The Gardinier Factors..........13

    V.     Even If Section 365 Applies, The Ruling Cannot Be Sustained...........................17

          A.    DBSP Is Entitled To The Benefit Of The Waterfall
               And Indemnity Provisions.................................................................17

           B.    DBSP Is Entitled To Compliance With The Freddie Mac
               Approval Requirement....................................................................17

CONCLUSION.........................................................................................19

## TABLE OF CITATIONS

**Cases**

Chicago Board of Trade v. Johnson,
    264 U.S. 1 (1924)....................................................................................................7, 8

Dawson Home Fashions, Inc. v. SRCO Inc.,
    1995 WL 679253 (S.D.N.Y. Nov. 15, 1995).....................................................18

Franklin Apartment Assoc., Inc. v. Westbrook Tenants Corp.,
    841 N.YS.2d 673 (N.Y.App. Div. 2007)...........................................................12

Greenfield v. Philles Records, Inc.,
    98 N.Y.2d 562 (2002).......................................................................................13

In re Buffets Holdings, Inc.,
    2008 WL 2080555 (Bankr.D.Del. May 16, 2008).......................................3, 11, 13, 15, 16

In re Burr Wolff, LP,
    2007 WL 2964835 (S.D.Tex. Oct. 10, 2007).......................................................5

In re Draughon Training Institute, Inc.,
    119 B.R. 927, 932 (Bankr.W.D.La. 1990)..........................................................11

In re Fleming Companies, Inc.,
    499 F.3d 300 (3d Cir. 2007).......................................................................2, 18, 19

In re Gardinier, Inc.,
    831 F.2d 974 (11th Cir. 1987)......................................................................13, 14, 15

In re Haskell L.P., 321 B.R. 1,
    (Bankr. D. Mass. 2005)......................................................................................9

In re Six,
    190 B.R. 958 (Bankr. M.D. Fla. 1995)..............................................................8

Integrated Solutions, Inc. v. Service Support Specialties, Inc.,
    124 F.3d 487 (3d Cir. 1997)...........................................................................6, 7

Landry v. Exxon Pipeline Co.,
    260 B.R. 769 (Bankr. M.D. La. 2001)...............................................................8

Lipsky v. Commonwealth United Corp.,
    551 F.2d 887 (2d Cir. 1976)..............................................................................18

National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur,
    892 F.2d 199 (2d Cir. 1989)..............................................................................15

Picco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.),
    173 B.R. 844 (S D.N.Y. 1994)..........................................................................14

Rice v. Shoney's, Inc. (In re Dean),
    174 B.R. 787 (Bankr. E.D. Ark. 1994)................................................................8

State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004)..............................................................................10

United States v. Bethlehem Steel Corp.,
    315 U.S. 289 (1942)..........................................................................................15

U.S. v. Lara-Ramirez,
    519 F.3d 76 (1st Cir. 2008) ................................................................................5

U.S. Trustee v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.),
    104 F.3d 1147 (9th Cir. 1997)............................................................................6

## Statutes

11 U.S.C. § 363.......................................................................................*passim*

11 U.S.C. § 363(f)(5)..........................................................................8, 9, 10

11 U.S.C. § 363(l)........................................................................... 1, 6, 7, 8

11 U.S.C. § 365.......................................................................................*passim*

11 U.S.C. § 365(f)(1)...........................................................................................6

11 U.S.C. § 365(f)(3)...........................................................................................6

## Rules and Secondary Sources

Federal Rule of Bankruptcy Procedure 8006..............................................................6

H.R. Rep. No. 595, at 345-346 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6301-6303..........9

3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY
¶ 363.10[2] (15th ed. rev. 2005)..........................................................................7

NORTON BANKRUPTCY RULES PAMPHLET 594 (1996-97 ed.)........................................ 6

WILLISTON ON CONTRACTS, Rev. Ed., § 863 (1942).................................................13

## SUMMARY OF REPLY

The Debtor/Appellees' Answering Brief (the "Debtors' Brief") is largely targeted to have this Court avoid addressing an error of law committed by the Bankruptcy Court[1] – its conclusion that the MLPSA could be transferred even if it is a non-executory contract – that, even without consideration of the sustainability of the Bankruptcy Court's factual findings, mandates reversal of the Sale Order with respect to the MLPSA. According to the Debtors, DBSP's relative indifference to the characterization of the MLPSA as either executory or non-executory *prior* to the issuance of the Ruling (when DBSP firmly believed, as it still does, that the MLPSA could not be assigned regardless of such characterization), somehow impairs DBSP's ability, *in light of* the Ruling, to challenge the Ruling on the basis of its incompatibility with the Bankruptcy Court's findings. Having spent pages of their principal trial brief successfully advancing the proposition that the MLPSA is *not executory* (a proposition that DBSP expressly declined to contest), the Debtors are in no position to now preclude DBSP from challenging a ruling that can only be colorably defended (if at all) if the MLPSA is *executory* and therefore governed by section 365 of the Bankruptcy Code.

The Debtors' Brief also attempts, in the alternative, to defend the Ruling within the framework of section 363 of the Bankruptcy Code. That defense fails as well, because, among other things, it relies heavily on an unsustainable interpretation of Bankruptcy Code section 363(l) that has been squarely rejected by controlling Third Circuit authority, among other courts (including, in a seminal pre-Code case, the United States Supreme Court).

The Debtors' arguments regarding contract divisibility under New York law are

---

[1]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Opening Brief of Appellant DB Structured Products, Inc.* ("Opening Brief").

also unavailing. In advancing the argument that the MLPSA is divisible, the Debtors minimize the significance of the Waterfall Provisions in a way that even the Bankruptcy Court would not do in its Ruling. The Waterfall Provisions could hardly be more central to the loan servicing function, given that it is only by dint of those provisions that the servicer has any idea what to do with the money that it collects. Therefore, the only way the Bankruptcy Court could arrive at the conclusion that the MLPSA is divisible was by invoking the "well established cross-default rule." See A2141 (Oct. 23, 2007 Hrg. Transcript at 25).[2] However well established it may be, that rule applies only to agreements governed by section 365, of which the MLPSA is, by the Debtors' own admission, not one. In any event, even if the contract is divisible, it is unclear why that should help the Debtors: regardless of whether the MLPSA may be divided into two separate agreements under New York law, the Debtors have never argued that the Waterfall and Indemnity Provisions are not enforceable under New York law.

Finally, even under a section 365 analysis, the Ruling must be reversed. The Debtors interpret controlling authority in the Third Circuit to provide the Bankruptcy Court with the "equitable discretion to modify the MLPSA as necessary to permit the sale thereof." Debtors' Brief at 30. Consistent with the result-seeking rule they espouse, the Debtors go on to suggest that "even if the Indemnity, Default, and Waterfall Provisions of the MLPSA constituted 'material and significant' terms of the contract, the Fleming analysis would permit the Bankruptcy Court to balance DBSP's right to insist on strict performance of its contract against the Debtors' and their creditors' right to realize the intrinsic value of the servicing rights by selling them to the Buyer." Debtors' Brief at 33. Unfortunately for the Debtors, however, there is no rule that permits a debtor to eviscerate material contract terms simply

_____

[2]        "A" followed by a number refers to a specific page of the Appendix filed with the Opening Brief.

because doing so would be beneficial to its estate.  See In re Buffets Holdings, Inc., 2008 WL 2080555, *8 (Bankr. D. Del. May 16, 2008) ("[T]here is no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible.") (citations omitted).

## ARGUMENT

I.    **DBSP'S Arguments Are Properly Before The Court On Appeal.**

Considering that no party was more active in its objection to the Sale Motion than DBSP; that DBSP immediately filed a motion for stay pending appeal; that the motion for stay was not challenged by the Debtors, but was rather resolved to avoid any impairment of the appeal; and that DBSP identified seven questions for consideration in its issues statement that present independently viable challenges to the Ruling, it is remarkable that the Debtors now suggest that rather than address the merits, the Court should simply disregard DBSP's appeal on some theory of futility or estoppel.  See Debtors' Brief at 8-17.

A.    **DBSP Expressly Declined To Challenge The Debtors'**
      **Contention That The MSLP Is Not Executory.**

Prior to the Sale Hearing, the Debtors filed the *Debtors' Omnibus Response to Certain Objections to the Sale of Certain Assets and the Assumption and Assignment of Executory Contracts Relating to the Debtors' Loan Servicing Business* [D.I. 1443] (the "Omnibus Response"), in which most of the first section was devoted to the proposition that the Debtors' servicing agreements, including the MLPSA, are *not* executory contracts. [3]  (See Appx. A at 18  ("As discussed below, the Servicing Agreements are not executory contracts.

_____

[3]    Although designated in the Appellant's *Designation of the Record and Statement of Issues on Appeal* (see A3282, D.I. 2067], the Omnibus Response was not included in the Appendix submitted with Appellant's Opening Brief.  A true and correct copy of the Omnibus Response is attached hereto as Appendix A.

Accordingly, the Servicing Rights can be sold pursuant to § 363 of the Bankruptcy Code, and any objections to the sale of the Servicing Rights which are premised on § 365 should be overruled."). Among other things, the Debtors pointed out that the servicing agreements "impose no substantive obligations on the non-debtor parties[,]" and cited to two cases directly supporting the proposition that servicing agreements of the kind subject to the Sale were not executory within the meaning of section 365. See Appx. A at 22.

In response, DBSP filed a reply [D.I. 1533] (the "Reply"), in which DBSP questioned whether the MLPSA was non-executory, but then immediately and expressly went on to concede the point for the purposes of the Sale Motion. See A204-A295. As stated in Reply:

> DBSP need not challenge the Debtors' characterization of the [MLPSA], because it is not one that advances the Debtors' cause. By calling the Agreement non-executory, the Debtors hope to assign its benefits to the proposed purchaser (the "Buyer"), while leaving behind substantial monetary obligations. .…
> Unfortunately for the Debtors, what they propose is not permitted by law.

A205. Thus, rather than challenge the Debtors on a contention that would not advance the Debtors' case, DBSP chose to accept the Debtors' assertion that their servicing agreements were not executory. Ultimately, the Bankruptcy Court agreed with the Debtors that mortgage servicing contracts are not executory, explaining that under such contracts, rather than imposing an affirmative payment obligation on the part of the non-debtor that would render the contract executory, "the servicer's right of payment of its servicing fees… is solely payable from the stream of payments of the mortgagor or the proceeds of the collateral…. Thus, the contracts are not executory." A2126 (Oct. 23, 2007 Hrg. Transcript at 10). For the reasons discussed in the Opening Brief and herein, that holding is fatal to the Ruling. The Debtors cannot avoid this reality by attempting to bind DBSP to a characterization of the MLPSA that neither the Debtors nor the Bankruptcy Court ever accepted.

**B.    The Bankruptcy Court Necessarily Ruled That The
MLPSA Is Not Executory.**

The Debtors take issue with the suggestion that the Bankruptcy Court "found" the

MLPSA to be non-executory, pointing to language in the Ruling that limited the Bankruptcy

Court's conclusions on the issue to apply to the non-objecting parties.  Debtors' Brief at 12.  But

the Bankruptcy Court could not have held the non-objecting parties' servicing agreements to be

not executory without at least implicitly arriving at the identical conclusion regarding the

MLPSA:  it is undisputed that there is no distinction among the relevant servicing agreements

that differentiate them with regard to their executory status.  As the Debtors would be forced to

admit (and essentially have advocated), if one of the agreements is not executory, then none of

them are executory.  Thus, the Bankruptcy Court at least implicitly ruled that the MLPSA is not

executory, and that implicit ruling is no less reviewable by this Court than an explicit one.  See,

e.g., U.S. v. Lara-Ramirez, 519 F.3d 76, 83 (1st Cir. 2008) (district court's "implicit legal

determination" reviewed de novo); In re Burr Wolff, LP, 2007 WL 2964835, *4 (S.D. Tex. Oct.

10, 2007) ("[The] bankruptcy court necessarily found, or at least assumed, that the E & O policy

proceeds already existed.  This was error….").

**C.    The Bankruptcy Court's "Alternative" Ruling
Does Not Insulate The Ruling From Appellate Review.**

The Debtors attempt to deflect DBSP's challenge of the Ruling by asserting, as

the Bankruptcy Court did at a subsequent hearing, that the Bankruptcy Court had "ruled in the

alternative[.]" Debtors' Brief at 8-15.  But contrary to what the Debtors appear to believe, a

"ruling in the alternative" is not a contrivance to permit a court to insulate an internally

contradictory opinion from appellate review.  If the Bankruptcy Court ruled that the MLPSA can

be sold per the Debtors' request if it is both executory and non-executory, then, to be sustainable,

both propositions must be correct as a matter of law.  Accordingly, if DBSP can show either that

5

the Ruling is erroneous if the MLPSA is an executory contract under section 365, *or* that the Ruling is erroneous if it is non-executory and therefore subject to section 363, then, in either case, this Court would have no choice but to reverse the Ruling or, at a minimum, remand to the Bankruptcy Court for a determination as to the status of the MLPSA. The MLPSA either is executory, or it is not executory. It cannot be both.[4]

## II.  Nothing In Section 363 of The Bankruptcy Code Overrides Restrictions On Assignment.

### A.  Controlling Third Circuit Authority Precludes The Debtors' Arguments Under Section 363(l).

The Debtors' arguments to justify the Bankruptcy Court's critical error – that the Waterfall and Indemnity Provisions, as well as the general limitation on assignment under Section 13.05 of the MLPSA, are all "anti-assignment provisions" and are all barred by section 363(l) of the Bankruptcy Code (see A2143 (Oct. 23, 2007 Hrg. Transcript at 27)) are unconvincing because, among numerous other things, they find no expression in the text of section 363(l), and would render section 365(f)(1), as well as section 365(f)(3), entirely redundant. However, DBSP need not engage in a point-by-point refutation because the Debtors' arguments, and the Bankruptcy Court's conclusions, are contrary to controlling Third Circuit authority. The Third Circuit, in Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487 (3d Cir. 1997), has made it clear that section 363 is an enabling statute – nothing in

---

[4]     The Debtors also suggest that DBSP's alternative arguments based on section 365 of the Bankruptcy Code have been "waived" because, in the Debtors' view, they were "not fairly encompassed by the designation of those issues on appeal[.]" See Debtors' Brief at 16. Aside from their inaccurate characterization of the issues statement (at a minimum, issues no. 4 and 6 directly implicate section 365), the Debtors also misstate the law. Although there is no case on point in the Third Circuit, both the Ninth Circuit and a leading treatise have held that a statement of issues filed by pursuant to Federal Rule of Bankruptcy Procedure 8006 imposes no limitation on a party's appellate rights. U.S. Trustee v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 104 F.3d 1147, 1148 (9th Cir. 1997) (quoting NORTON BANKRUPTCY RULES PAMPHLET 594 (1996-97 ed.)("The [Rule 8006] requirement of a statement of the issues is not intended to bind either party to the appeal as to the issues that are to be presented to the appellate court.")).

section 363 displaces restrictions on transfer that otherwise exist under applicable non-bankruptcy law. See id. at 493-96. And while the Debtors do their best to minimize the significance of Integrated, even claiming that DBSP "overstates" its holding, the fact is that the Integrated decision is not based on any of the half-hearted distinctions that the Debtors attempt to draw between the facts of Integrated and those prevailing here, but rather on the much broader proposition that "without explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy." Id. at 493.

Integrated is not novel or surprising. As noted by a leading bankruptcy treatise, section 363(l), along with section 541, "codifies the well-known case of Chicago Board of Trade v. Johnson, [264 U.S. 1 (1924)]. In that case, the trustee sought to sell the debtor's seat on the Chicago Board of Trade, without complying with the Board's rule that the seat owner's debts to other seat owners must be satisfied before a seat may be transferred. The Court held that the trustee received the property subject to the generally applicable restriction on transfer, and thus the trustee could sell the seat only if it complied with the restriction." 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 363.10[2] (15th ed. rev. 2005). Given that the debts in question in Johnson were unrelated debts owed, not to the Chicago Board of Trade itself, but rather to individual seat holders, whereas here the EPD and Premium Recapture claims relate directly to loans serviced under the MLPSA, it is hard to imagine how Johnson could square with any theory of section 363 under which the Ruling is upheld.

The Debtors also attempt to distinguish between the transfer of prejudgment tort claims restricted by state law in Integrated and what the Debtors call "garden variety contract rights" at issue here. Debtors' Brief at 37. There is nothing in the holding or reasoning of Integrated that even hints at the relevance of this distinction, and the Debtors fail to identify a

single case to support it. Indeed, the assignment restriction that was upheld by the Supreme Court in Johnson only arose as a matter of contract, not statute. See Johnson, 264 U.S. at 7-8. Accord In re Six, 190 B.R. 958, 962 (Bankr. M.D. Fla. 1995) (recognition of transfer restrictions "are not limited to those which are imposed by Statute *but also recognized if imposed by contract.*") (emphasis added); see also Rice v. Shoney's, Inc. (In re Dean), 174 B.R. 787 (Bankr. E.D. Ark. 1994) (transfer restrictions contained in joint venture agreement "not invalidated by any provision of the Bankruptcy Code."); Landry v. Exxon Pipeline Co., 260 B.R. 769, 787 (Bankr. M.D. La. 2001) ("[I]nsurance proceeds, if they were considered property of the estate, necessarily would be distributed only to those to whom the state insurance law, *or the policies themselves*, gave a right to distribution.") (citing Johnson) (emphasis added).

**B.     The Sale Cannot Be Justified Under Section 363(f)(5).**

Although there is nothing in the Ruling suggesting that the Bankruptcy Court believed there was any basis for overriding the MLPSA's assignment restrictions, the Waterfall Provisions, or the Indemnity Provision under any provision of section 363 other than through its mistaken interpretation of section 363(l), the Debtors offer an alternate basis on which they contend that the Ruling may be justified, at least insofar as it held unenforceable Section 13.05 of the MLPSA, which requires the consent of DBSP to any assignment, not to be unreasonably withheld. See A2143 (Oct. 23, 2007 Hrg. Transcript at 27). According to the Debtors, the Bankruptcy Court could have properly approved the Sale free and clear of that restriction under section 363(f)(5) of the Bankruptcy Code, which permits a free and clear sale of a non-debtors' property interest where "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." See Debtors' Brief at 7; see also 11 U.S.C. § 363(f)(5). The Debtors contend that under New York law, Section 13.05 does not render any assignment void *ab initio*, but merely entitles DBSP to money damages in the event that an

assignment occurs in violation of the MLPSA. See Debtors' Brief at 7; 37-38. Therefore, the Debtors reason, DBSP could be forced to accept a money satisfaction of the anti-assignment provision and the Sale, notwithstanding that provision, may be approved under section 363(f)(5). Id. at 37-38.

The Debtors' argument is a red herring. The Debtors attempt to focus the Court's attention on the question of whether, *in the event of a breach that has already occurred*, DBSP would have the right to undo the assignment or, instead, would be required to settle for money damages. This is a separate and distinct from the question of whether, as here, the Debtors would be able to force DBSP to accept a monetary payment *before* the prohibited assignment has occurred. Not surprisingly, the Debtors cite no authority for that remarkable proposition, and DBSP is not aware of any. That theoretically, in the event of an assignment in breach of the MLPSA, the assignment might be valid and DBSP's resulting claim recoverable only in money damages, does not provide a basis for overriding an assignment restriction under section 363(f)(5). Cf. In re Haskell L.P., 321 B.R. 1, 9 (Bankr. D. Mass. 2005) ("[T]he Court rejects the Debtor's argument that it need only show that it is theoretically possible to compel a party to accept a money satisfaction of its interest and that the possibility of an eminent domain taking satisfies § 363(f)(5).").

Moreover, given the Sale Order, the Debtors' reliance on section 363(f)(5) is futile. Even assuming, for argument's sake, that the Debtors' could sell the MLPSA free and clear of contractual assignment restrictions pursuant to section 363(f)(5), that would then trigger DBSP's right to adequate protection under section 363(e) of the Bankruptcy Code, which most often includes the attachment of the non-debtor party's resulting claim to the proceeds of the sale. See, e.g., id. at 6 (citing H.R. Rep. No. 595, at 345-346 (1977), *reprinted in* 1978

U.S.C.C.A.N. 5963, 6301-6303). Here, the Sale Order provides *no* adequate protection for DBSP and, indeed, ensures that DBSP will have nothing but a general unsecured claim for its EPD, Premium Recapture, and other claims. Thus, even under the Debtors' theory of section 363(f)(5), the Sale Order must be reversed.[5]

### III.  Whether The MLPSA Constitutes A Single Agreement Is Irrelevant, Given That The MLPSA Is Not Executory: Even If Divisible, It Remains Enforceable.

The Debtors contend that the Bankruptcy Court's ruling that the MLPSA is divisible into two separate contracts is "the central issue on appeal," and accuse DBSP of "obfuscating" that in its Opening Brief. In fact, by framing the divisibility question separately and apart from their discussion of section 365, it is the *Debtors* who are guilty of obfuscation by, among other things, suggesting that the issue of divisibility is independently viable outside the context of section 365. It is not. The Debtors have not disputed that the Waterfall Provisions, the Indemnity Provision, or Section 13.05 (the assignment restriction) are enforceable under New York law. Consequently, even if the MLPSA could be appropriately divided into servicing and sale components, the Waterfall Provisions, which govern servicing, would still be enforceable; the Indemnity Provision, which applies equally to both servicing and sale obligations, would be enforceable; and Section 13.05, which applies equally to both servicing and sale obligations, would be enforceable.

_____

[5]     The Debtors also suggest that this Court make a new factual finding that under Section 13.05, DBSP's consent to the Sale has been "unreasonably withheld." Debtors' Brief, p. 38. First, the reasonableness of DBSP's withholding of consent was never even considered by the Bankruptcy Court. Rather, the Court found the anti-assignment provision to be "unenforceable." See A2143 (Oct. 23, 2007 Hrg. Transcript at 27). Second, DBSP's decision not to consent given, among other things, the buyer's unwillingness to abide by the entirety of the MLPSA, was not unreasonable. See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 170 (2d Cir. 2004) (even assuming that creditor-bank could not unreasonably withhold consent under credit agreement, it "was justified in seeking to protect itself by conditioning its consent to the sale on the receipt of additional collateral and economic benefits."). And third, because of the Buyer's unwillingness to abide by the Waterfall and Indemnity Provisions, the question of whether Section 13.05's restriction is enforceable is academic in any event.

As discussed in section II.A. above, under section 363 and controlling Third Circuit authority, all of these provisions remain binding on the Contracting Debtors in bankruptcy, and any assignment to a third party can only take place subject to these provisions. See also, In re Draughon Training Institute, Inc., 119 B.R. 927, 932 (Bankr.W.D.La. 1990) ("There is no language in § 363 that changes what the debtor has to sell .... The jurisprudence on this issue holds that non-bankruptcy related transfer restrictions burdening property will be given effect when property is sold out of the estate to a non-debtor third party."). Thus, in order for the Debtors to prevail, they must show that: (a) the MLPSA is executory, and therefore subject to section 365, rather than section 363; (b) the MLPSA constitutes two separate agreements under New York law; (c) the Waterfall and Indemnification provisions can reasonably be construed as "anti-assignment" provisions; *and* (d) that under the circumstances, such anti-assignment provisions would be unenforceable under section 365(f) of the Bankruptcy Code. See In re Buffets Holdings, Inc., 2008 WL at *7 ("[C]ontrary to the suggestion of the Debtors and the Committee, cross-default provisions are not *per se* invalid under section 365."). Because the Debtors do not contend that (a) is true, (b) (c) and (d) are irrelevant. If the MLPSA is not executory, the Ruling cannot be sustained.

IV.    **The MLPSA Is A Single Agreement Under New York Law**

    A.    **The Bankruptcy Court's Analysis Disregarded Key Elements of the MLPSA**

Even assuming the divisibility of the MLPSA is relevant, the Bankruptcy Court erred in concluding that the MLPSA is not a single agreement, by, among other things, arbitrarily invalidating those provisions that most clearly tie the MLPSA together. First, the Bankruptcy Court invoked the "cross-default" rule to invalidate the Waterfall and Indemnification Provisions. See A2143 (Oct. 23, 2007 Hrg. Transcript at 27). Of course, a "cross-default"

11

presupposes the existence of more than one agreement. Then, having put the cart firmly before the horse, the Bankruptcy Court found that the servicing rights subject to the Sale were part of a separate, self-contained agreement that was severable from the MLPSA. <u>See</u> A2140-2144 (Oct. 23, 2007 Hrg. Transcript at 24-28).

The Debtors attempt to defend the Bankruptcy Court's analysis in their brief, and assert: "Properly understood, the cross-default rule is not an exercise in question-begging that presupposes the outcome of the severability analysis; rather, it is *part and parcel of the severability analysis.* Just as multiple, separately documented agreements may constitute a single, integrated transaction, so too may a single transaction contain multiple, divisible agreements." Debtors' Brief at 28 (citations omitted) (emphasis in original).

The Debtors' articulation of the Bankruptcy Court's analysis does not render it any less circular. Assuming it true that a "single transaction" could "contain multiple, divisible agreements," the only way to even colorably arrive at that conclusion with respect to the MLPSA would be by disregarding the Waterfall and Indemnity Provisions, among others. Doing so, however, ignores New York law, which governs the question of severability and requires that the court examine all of the terms of the contract to determine whether the parties intended one agreement or two. <u>Franklin Apartment Assoc., Inc. v. Westbrook Tenants Corp.</u>, 841 N.YS.2d 673, 674 (N.Y.App. Div. 2007) ("When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations.") (internal citations omitted). While it is true that, in some circumstances, cross-default provisions can be invalidated for purpose of assuming an executory contract under federal law, it does not automatically follow that these provisions can also be invalidated to

determine the question of severability, which is decided pursuant to state law. As Chief

Bankruptcy Judge Walrath found in the <u>Buffets Holdings</u> case:

> [T]here is no federal policy which requires severance of a lease condition solely
> because it makes a debtor's reorganization more feasible. Rather, the
> determination of whether a specific contract or lease is an indivisible agreement
> or is several agreements in one, which should properly be severable, depends on
> the application of state law.

<u>Buffets Holdings</u>, 2008 WL 2080555 at *8. (internal citations and quotations omitted). Pursuant

to New York law, where, as here, a contract is unambiguous "a court is not free to alter the

contract to reflect its personal notions of fairness and equity." <u>Greenfield v. Philles Records,</u>

<u>Inc.</u>, 98 N.Y.2d 562, 570 (2002). Accordingly, rather than invalidate the Waterfall and and

Indemnity Provisions, New York law required the Bankruptcy Court to consider those

unambiguous provisions of the MLPSA to determine whether the parties intended the sale and

service portions of the agreement to be linked. If it had done so, as Judge Walrath did in <u>Buffets</u>

<u>Holdings</u>, it would have had to conclude that the parties intended the MLPSA to be one

integrated agreement. <u>See</u> <u>Buffets Holdings</u>, 2008 WL 2080555 at *7 (finding that if agreement

was intended to be severable, then the alleged "cross-default" provisions would not have been

included).

> **B.    The MLPSA Is A Single Agreement**
> **Under The _Gardinier_ Factors.**

The Debtors suggest that all three factors considered by the Eleventh Circuit in

<u>Gardinier</u> weigh in their favor here. With respect to the first factor, relating to the "nature and

purpose" of the MLPSA, the Debtors ask the Court to disregard the testimony of their own

witness that definitively establishes that the Debtors viewed the MLPSA as a single,

economically integrated transaction. <u>See</u> Opening Brief at 20 (quoting and summarizing

testimony of Debtors' witness, Robert Johnson, at October 17, 2007 sale hearing); Debtors' Brief

at 20-21 (suggesting Johnson's testimony should be ignored). According to the Debtors, the parties "subjective intent" concerning the MLPSA is "inadmissible." Debtors' Brief at 20. But ignoring the testimony does not help the Debtors. The four corners of the MLPSA reveal a single document, containing a single set of signatures, with joint and several obligations among the debtor-parties, covering the purchase by DBSP of mortgage loans and the servicing by the Contracting Debtors of *those very same loans*. Without reference to testimony, therefore, the Debtors' "nature and purpose" argument does not get off the ground.

   Moreover, while the Debtors seem to find it relevant that the servicing of mortgage loans and the sale of those loans involve different tasks (see Debtors' Brief at 21), that is only because they misinterpret Gardinier's "nature and purpose" test, which asks only "whether the agreements cover the same subject matter, not whether they contain identical provisions." Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 854 (S.D.N.Y. 1994). Here, the MLPSA covers only the servicing of those loans also purchased by DBSP thereunder. Or, to put it the other way, it covers only the purchase of loans that are also serviced thereunder. Either way, it constitutes a single transaction. See id. ("[T]he nature and purpose of the agreements in the present case were substantially similar; they arose contemporaneously in the same transaction regarding the rental of the same computer equipment. … By definition, the agreements each provide for distinct rights and obligations; nonetheless, it is undisputed that they concern the same transaction.").

   With respect to the second Gardinier factor, which requires the consideration for a divisible agreement to be "separate and distinct," no such distinction exists here, where, among other things, the Waterfall Provisions are the exclusive mechanism by which the Servicer can recoup its fees (there is no recourse to DBSP under the MLPSA), and those very provisions

14

subordinate the Servicer's right to its fees to DBSP's sale-related claims.  In contrast, the

consideration in Gardinier was entirely distinct, involving payments to different, unrelated

parties, with no contingencies dependent on the performance of any other party.  See Gardinier,

831 F.2d at 976.  The Bankruptcy Court did not account for this distinction at all, and instead,

conclusorily asserted that "the MLPSAs establish separate and distinct consideration."  See

A2140 (Oct. 23, 2007 Hrg. Transcript at 24.)

   If what the Bankruptcy Court meant is that the purchase price for the loans and

the servicing fee was broken out separately under the MLPSA, then it was mistaken to consider

that dispositive.  "The ability to apportion the consideration to different parts of the contract is

one factor to be considered in determining the intent of the parties but it is not conclusive. …

The Seventh Circuit has noted that the intention of the parties is critical and '[e]ven if the parties

entered a multi-part contract, that contract cannot be severed after the fact if the parties entered it

"as a single whole," so that there would have been no bargain whatever, if any promise or set of

promises were struck out.'"  In re Buffets Holdings, Inc., 2008 WL at *5 (citations omitted).  See

also National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur, 892 F.2d 199, 205 (2d Cir. 1989)

("The issue of the dependency of separate contracts, therefore, boils down to the intent of the

parties."); United States v. Bethlehem Steel Corp., 315 U.S. 289 (1942) ("Whether a number of

promises constitute one contract or more than one is to be determined by inquiring 'whether the

parties assented to all the promises as a single whole, so that there would have been no bargain

whatever, if any promise or set of promises were struck out.' " (quoting WILLISTON ON

CONTRACTS, Rev. Ed., § 863 (1942)).

   Here, the only evidence presented at trial with respect to the specific intent of

these parties confirmed that the parties would not have separately entered into the MLPSA's

component parts – that the Contracting Debtors garnered certain benefits in relation to the sale by retaining the servicing rights, and that DBSP viewed it as important that the sale and servicing obligations under the MLPSA be interrelated. See A1557-A1558, A1560-A1562 (Oct. 17, 2007 Transcript at 42-43, 45-47) (testimony of Robert Johnson); A1824-A1827 (Oct. 18, 2007 Hrg. Transcript at 203-206) (testimony of Peter Principato).

With respect to the third factor, the interrelatedness of the parties' obligations, even the Debtors concede that their case depends on the Bankruptcy Court's "cross-default rule analysis," which invalidated the various provisions that tied together the obligations of the parties to the MLPSA. See Debtors' Brief at 23. For the reasons set forth in section IV.A. above, that analysis is fundamentally flawed, and provides no basis for dividing the MLPSA into two parts.

Moreover, even cross-default provisions are enforceable under section 365 if the agreements that they link are "economically interdependent." In re Buffets Holdings, Inc., 2008 WL at *7 (citations omitted). Thus, the Bankruptcy Court's labeling of the Waterfall and Indemnity Provisions as "unenforceable cross-default provisions that serve as *de facto* anti-assignment provisions" (see A2143 (Oct. 23, 2007 Hrg. Transcript at 27)) cannot justify disregarding them for the purposes of evaluating economic interdependence, when the very economic interdependence that they demonstrate renders them enforceable.[6]

---

[6]    It is no answer to suggest, as the Bankruptcy Court did, that as mere "credit enhancements," cross-default provisions do not demonstrate economic interdependence. See A2144 (Oct. 23, 2007 Hrg. Transcript at 28); see also In re Buffets Holdings, Inc., 2008 WL 2080555, *9 (Bankr.D.Del. May 16, 2008) ("The Debtors argue, however, that the Master Lease structure was motivated purely by financial considerations that served no business purpose apart from providing FP with credit enhancements (such as cross-default provisions). …The fact that the Master Lease structure was used for financial reasons is a red herring. Presumably, all business transactions are done for financial reasons.").

V.    **Even If Section 365 Applies, The Ruling**
      **Cannot Be Sustained.**

Because both the Debtors and the Bankruptcy Court agreed that the MLPSA is

not executory, DBSP submits that there is no basis upon which this Court can conclude that any

provision of section 365, which governs only executory contracts, could justify the Ruling.

However, even if section 365 does govern, the result would not change:  the Ruling could not be

sustained.

A.    **DBSP Is Entitled to the Benefit of the**
      **Waterfall and Indemnity Provisions.**

The Debtors, without any supporting authority, "assume" that <u>Fleming</u>'s "material

and economically significant" standard and the "economic interdependence" standard that is

applied to contract divisibility analysis "are closely related."  Debtors' Brief at 33.  It is not clear

why this is so.  Even assuming, *arguendo,* that the MLPSA is divisible as a matter of New York

law because, among other things, the sale and servicing aspects are not "economically

interdependent" (which they are), no one has argued that the Waterfall and Indemnity Provisions

of the "servicing contract" would not be enforceable under New York law, or that they are not

material, economically significant provisions.  Indeed, it is their very economic significance that

drives the Buyer's insistence that it not be required to comply with them.

B.    **DBSP Is Entitled to Compliance with the**
      **Freddie Mac Approval Requirement.**

The requirement of Freddie Mac qualification relates *directly* to servicing

obligations under the MLPSA.  Indeed, the Debtors' own witness confirmed that Freddie Mac

qualification serves as a standard by which to measure servicing quality.  <u>See</u> A1710-A1714

(Oct. 18, 2007 Hrg. Transcript at 91-92) (Fannie Mae and Freddie Mac guidelines provide

"baseline" standard and focus on "right areas of inquiry for an investor").  Yet, the Debtors

dismiss this requirement as "immaterial" because, as they quote the Bankruptcy Court colloquy, "there'd been no material change in the actual performance of servicing." Debtors' Brief at 39. This is precisely the kind of *post facto* analysis that the Third Circuit rejected in <u>Fleming</u>. There, the proposed assignee argued that it could "supply groceries to Albertson's at the same price and on the same payment terms as had [the Debtor]." <u>Fleming</u>, 499 F.3d at 306. It further argued that "as long as Albertson's receives groceries on those bargained-for terms… it does not matter from where those groceries are supplied." <u>See id.</u> The Third Circuit rejected this after-the-fact, Monday morning analysis of what was or wasn't economically material under the relevant supply agreement, and instead focused on the importance of the disputed provision "within the overall bargained-for exchange." <u>Id</u>.

Here, the evidence supports the conclusion that Freddie Mac approval was integral to the MLPSA, because it is a metric of servicing quality. <u>See</u> A1827-A1828 (Oct. 18, 2007 Hrg. Transcript at 206-207) (testimony of Peter Principato that Freddie Mac qualification is "an industry recognized standard"); A1710-A1714 (Oct. 18, 2007 Hrg. Transcript at 91-92). Moreover, the Bankruptcy Court's conclusion that the requirement is "immaterial" is entitled to no deference from this Court, because by focusing on the "actual performance of servicing" rather than on the bargain struck between the parties as required by <u>Fleming</u>, the Bankruptcy Court applied the wrong legal standard, which is subject to *de novo* review.[7]

---

[7]    The Debtors also suggest that their failure to remain Freddie Mac-qualified is not "material" under New York law. Debtors' Brief at 40. The test of materiality under New York law is "would the innocent party have agreed to the contract if the breached clause had been absent?" <u>Dawson Home Fashions, Inc. v. SRCO Inc.</u>, 1995 WL 679253 *7 (S.D.N.Y. Nov. 15, 1995) (quoting <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 895 (2d Cir. 1976)). The only evidence at trial suggested that, in fact, DBSP specifically viewed Freddie Mac qualification as an important provision that was contained in most of the loan sale and servicing agreements that they entered, including the MLPSA. <u>See</u> A1827-A1828 (Oct. 18, 2007 Hrg. Transcript at 206-207).

## CONCLUSION

The MLPSA is a single document, with one set of signatures, involving the same mortgage loans, pursuant to which all the debtor-parties are jointly and severally obligated thereunder, and that all the parties thereto intended to constitute a single agreement.  The Bankruptcy Court committed multiple errors to arrive at the conclusion that under such circumstances, the MLPSA is assignable in part.  Accordingly, DBSP respectfully requests that this Court reverse the Bankruptcy Court's Ruling and vacate that portion of the Sale Order that would permit the Contracting Debtors to assign the Servicing Rights to the Buyer.

Dated:  June 11, 2008

**BINGHAM McCUTCHEN LLP**
Steven Wilamowsky
399 Park Avenue
New York, NY 10022
(212) 705-7000

**BINGHAM McCUTCHEN LLP**
Andrew J. Gallo
150 Federal Street
Boston, MA  02110
(617) 951-8117

- and -

**ASHBY & GEDDES, P.A.**

William P. Bowden (I.D. #2553)
Don A. Beskrone (I.D. #4380)
Gregory A. Taylor (I.D. #4008)
Amanda M. Winfree (I.D. #4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Appellant DB Structured Products, Inc.*

19